## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARK D. FISCHER, on behalf of himself and
all others similarly situated,

        Plaintiff,

              v.

CERTAINTEED CORPORATION,

        Defendant.

Civil Action No. _____

**COMPLAINT – CLASS ACTION**

Jury Trial Demanded

Plaintiff, Mark D. Fischer, ("Plaintiff") on behalf of himself and all others similarly situated, by and through his undersigned counsel hereby files this Complaint against Defendant CertainTeed Corporation ("CertainTeed" or "Defendant"), and alleges the following based on personal knowledge, the investigation of counsel, and upon information and belief as to all other matters:

## I.     PARTIES

1.       Plaintiff Mark D. Fischer is a resident of the Commonwealth of Kentucky and resides at 184 Bow Lane, Louisville, Kentucky 40207. In connection with the new construction of his home, Plaintiff selected and had installed Symphony brand Colonial Gray shingles from CertainTeed in or about December 2012.

2.       Defendant CertainTeed Corporation is a Delaware corporation with its principal place of business located in Malvern, Pennsylvania. CertainTeed is a leading manufacturer of exterior and interior building materials and supplies, including roofing, siding, insulation, windows and foundations. CertainTeed is a subsidiary of Saint-Gobain, a French corporation listed on numerous stock exchanges across Europe.

## II.    JURISDICTION AND VENUE

3.    This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) in that there is diversity of citizenship between the named Plaintiff and members of the Proposed Class and Defendant, and the aggregate amount in controversy exceeds $5 million dollars.

4.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant CertainTeed maintains its headquarters in this District and continuously conducts business throughout the Commonwealth, including within this District.

## III.    FACTUAL BACKGROUND

5.    Defendant CertainTeed manufactures low slope and steep slope roofing products for commercial, industrial, institutional, and residential roofing and waterproofing applications. CertainTeed offers a variety of residential roofing products in various shapes, colors, and styles, all of which are composed of asphalt and other building materials.

6.    On or about March 2008, Defendant began producing and marketing a new style of shingle labeled and sold under the brand name "Symphony."

7.    Symphony shingles are an engineered polymer composite roofing product designed to simulate the appearance, texture and contours of traditional natural slate.

8.    Symphony shingles offer many benefits over natural slate. Not only are Symphony shingles a fraction of the weight and cost, but they are easier and faster to install. Unlike natural slate, Symphony shingles can be installed without adding heavier structural joists necessary to support the weight of natural slate, do not require the use of specialized equipment to cut and fit the "slate tiles," do not need to be hand nailed and can be installed using a pneumatic air gun, and come in pre-blended colors, so the contractor need not spend time sorting and matching colors.

9.    Symphony shingles are also shatter resistant, unlike natural slate which is susceptible to cracking in cold weather, when walked upon, or struck by a falling object such as a tree limb or branch.

10.    CertainTeed marketed Symphony shingles as a premium roofing product, boasting its "incredible strength," "a durability that exceeds other alternatives on the market," "excellent weathering capabilities for long life," and "U.V. fade resistant surface technology for superior color stability."

11.    Certainteed's Symphony shingles carry a 50-year limited warranty to the original property owner/consumer that the Symphony shingles "will be free from manufacturing defects that cause leaks" from the date of original installation. "CertainTeed will pay to repair or replace, at its option, any shingles CertainTeed determines to be defective under the terms of th[e] Limited Warranty."

12.    If CertainTeed determines the shingles to be defective and cause leaks within the first 7 years of original installation, CertainTeed will pay an amount "equal to the reasonable material and labor cost to replace or repair the defective shingles that cause leaks." CertainTeed refers to this 7-year warranty feature as SureStart™ Protection. "Roof tear-off, metal work, flashing and disposal expenses, and other costs or expenses incurred during such repair or replacement are not covered or reimbursed by th[e] Limited Warranty."

13.    If CertainTeed determines the shingles to be defective and cause leaks after the 7-year SureStart™ period, CertainTeed will contribute toward the cost of repairing or replacing the defective shingles a specified amount "not to exceed \$350/square, less $1/600^{th}$ of that amount times the number of months from the date the shingles were originally installed to the date when CertainTeed determined the shingles to be defective." Like SureStart™, "roof tear-off, metal work, flashing and disposal expenses, and other costs or expenses incurred during such repair or

replacement are not covered or reimbursed by th[e] Limited Warranty." However, unlike SureStart™, labor costs are not covered or reimbursed for defects CertainTeed determines after the SureStart™ period.

14.    Contrary to its representations and warranties, CertainTeed's Symphony shingles were defectively designed and manufactured such that they prematurely and unreasonably deteriorated by blistering, warping, fading, and otherwise not performing in accordance with representations that they would be durable and suitable for use as a roofing product.

15.    Plaintiff had CertainTeed's Symphony brand Colonial Gray shingles installed on his newly-constructed home in or about December 2012.

16.    In 2014, Plaintiff first noticed that his Symphony shingles were beginning to fade. Over time, the shingles faded significantly from their original color of dark gray to a very light chalky color and have begun to curl and warp in various directions exposing the underlying wood substrate to the elements.

17.    Between September 2014 and 2018, Plaintiff contacted the builder of his home and Highland Roofing, the subcontractor who installed Plaintiff's Symphony shingles, about problems with his roof.

18.    Plaintiff notified CertainTeed on October 14, 2018 of the issues he was experiencing with his roof.

19.    CertainTeed investigated Plaintiff's claims and evaluated sample shingles from his roof. As a result of that investigation, CertainTeed agreed to replace all Symphony shingles on Plaintiff's entire roof, or about 112 squares of Symphony shingles, in consideration for $115,920.00 under the terms of the Limited Warranty. This amount represented only the cost of materials and labor to install a replacement roof. It did not include compensation for the costs to remove and dispose of the defective shingles.

4

20.     The remedies provided by the Limited Warranty are inadequate in that it limits Plaintiffs' and class members' recovery only to: (i) material and labor costs to replace the shingles during the SureStart™ period, and (ii) material costs to replace the shingles after the SureStart™ period. It excludes the costs of labor to remove the defective shingles and dispose of them. After the SureStart™ period, it also excludes the cost of labor to replace the defective shingles.

21.     Upon information and belief, CertainTeed attempted to cure and ameliorate the defects experienced by Plaintiff by modifying the material composition of its Symphony shingles, but such modifications have not cured the defects. As a result, CertainTeed discontinued the production of Symphony shingles in or about 2018 due to their continued and systematic failures.

22.     Plaintiff and the Class have suffered actual damages in that their Symphony shingles have and will continue to fail prematurely, requiring them to expend thousands of dollars to remove, replace, repair, and dispose of the defective shingles and remedy the structural and other damage caused by CertainTeed's Symphony shingles.

## IV.     CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the following class:

> All individuals and entities that own, or have owned or acquired, homes or other structures physically located in the United States from 2008 through the present, on which CertainTeed's Symphony shingles is or has been installed. Excluded from the class is the Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest of Defendant, and Defendant's legal representatives, assigns and successors.

24.     Alternatively, or in addition to the nationwide Class, Plaintiff brings these claims under Fed. R. Civ. P. 23 on behalf of himself and on behalf of a Subclass of individuals and entities

residing in Kentucky and in those states where the laws are similar to those of Kentucky ("Kentucky

Subclass"). The Kentucky Subclass is defined as:

> All individuals and entities that own, or have owned or acquired, homes or other structures physically located in the Commonwealth of Kentucky from 2008 through the present, on which CertainTeed's Symphony shingles is or has been installed. Excluded from the class is the Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest of Defendant, and Defendant's legal representatives, assigns and successors.

25.     The members of the Class are so numerous that joinder of all of them would be

impracticable. While the precise number of members is not known to Plaintiff at the present time,

CertainTeed Symphony shingles have been sold actively throughout the class period, and there are

likely to be thousands of members in the class.

26.     There are questions of law or fact common to the Class, including the following:

a.   Whether CertainTeed Symphony shingles are defective;

b.   Whether Defendant knew or should have known that CertainTeed Symphony shingles were defective;

c.   Whether Defendant owed a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the design, manufacture and marketing of CertainTeed Symphony shingles;

d.   Whether Defendant breached the duty owed to Plaintiff and the Class by

1.   designing, manufacturing and marketing defective CertainTeed Symphony shingles;

e.   Whether CertainTeed Symphony shingles fail or failed to perform in accordance with the reasonable expectations of ordinary consumers;

f.   Whether CertainTeed Symphony shingles fail or failed to perform in accordance with Defendant's warranties;

g.  Whether Defendant breached its warranties with Plaintiff and the Class;

h.  Whether Plaintiff and the class are entitled to compensatory damages and the amount of such damages; and

i.  Whether Defendant was unjustly enriched by their conduct.

27.    The claims and defenses of Plaintiff are typical of the claims of all members of the Class. By proving his case, Plaintiff will simultaneously prove the cases of the members of the Class.

28.    The Plaintiff will fairly and adequately represent the Class. Plaintiff is willing and able to serve as representative of the Class and has no knowledge of any possible divergent interest between or among Plaintiff and any member of the Class. Plaintiff has retained highly competent counsel experienced in class actions and complex litigation to provide representation on behalf of the Plaintiff and the Class.

29.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

30.    The prosecution of separate actions would also create a substantial risk of adjudications with respect to individual members of the Class, which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

31.    Questions of law and fact common to members of the Class predominate over any questions affecting individual members. The determinative facts and legal principles apply universally among Plaintiff and the members of the Class. Indeed, the predominant legal issue in this case, which cuts across the entire Class, is whether Defendant breached a duty universally owed to the Plaintiff and the members of the Class in failing to exercise reasonable and ordinary care in the design, manufacture and marketing of CertainTeed shingles and/or breaching their warranties with

Plaintiff and the Class. If liability against Defendant is established on the basis of the common facts applied to universally-applicable principles of law, then damages can be precisely calculated based on objective data.

32.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy for reasons including that, due to the expense of pursuing individual litigation regarding Defendant's common course of conduct alleged herein, members of the Class would, as a practical matter, be effectively precluded from protecting and enforcing their legal rights.

## V.    ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

33.    Defendant is estopped from relying on any statutes of limitation by virtue of its acts of fraudulent concealment, which include Defendant's intentional concealment from Plaintiff and the general public that its Symphony shingles were defective, while continually marketing its Symphony Shingles as a quality, long-lasting product. Defendant's acts of fraudulent concealment include failing to disclose that its Symphony shingles were defectively manufactured and would deteriorate prematurely, leading to damage to the very structures they were purchased to protect. Through such acts Defendant was able to conceal from the public the truth concerning its product.

34.    Plaintiff had no knowledge that the Symphony Shingles he purchased were defective and unreliable prior to purchase. Plaintiff had no reasonable way to discover this after the Symphony shingles were purchased and installed on his home.

35.    Defendant had a duty to disclose that its Symphony shingles were defective, unreliable and inherently flawed in their design and/or manufacture.

## VI.    CLAIMS FOR RELIEF

### COUNT ONE – BREACH OF EXPRESS WARRANTY

36.    Plaintiff hereby incorporates by reference the allegations contained in the prior paragraphs as if set forth in full.

8

37.     Defendant marketed and sold its Symphony shingles with the express warranty that they were quality and durable and would provide long-lasting aesthetic appearance and protection. Further, Defendant guaranteed that its Symphony shingles would be free from manufacturing defects, and that it would repair or replace any shingles found to be defective under its warranty for a time period ranging from 2008 through the present.

38.     Defendant has breached its express warranty to Plaintiff in that its Symphony shingles were not "quality products" and are not "long-lasting" at the time of sale, and otherwise do not perform as expressly represented by Defendant.

39.     Upon information and belief, the Defendant has failed to live up to its warranty by not responding to customer complaints and claims that its Symphony shingles are defective. As a result, CertainTeed does not repair or replace defective Symphony shingles as expressly warranted.

40.     Defendant has failed and refused to honor the terms of the express warranty causing the warranty to fail its essential purpose.

41.     As a direct and proximate result of Defendant's breach of warranty, Plaintiff and the Class members suffered and will continue to suffer direct and consequential damages in an amount to be proven at trial.

## COUNT TWO – BREACH OF IMPLIED WARRANTY

42.     Plaintiff hereby incorporates by reference the allegations contained in the prior paragraphs as if set forth in full.

43.     At all relevant times, Defendant manufactured and sold its Symphony shingles to Plaintiff and members of the Class, and in so doing, impliedly warranted to them that the shingles were of merchantable quality and fit for the use for which they were intended.

44.     The Symphony shingles were unfit for their intended use and were not of merchantable quality, as warranted by Defendant, in that they were vulnerable (by virtue of their defective design) to fail in the ways detailed in this Complaint.

45.     Defendant breached the implied warranty of merchantability in that its Symphony shingles were defective and not fit for the ordinary purposes for which such shingles are used; that is, to provide durable, long-lasting, suitable protection for residences and other properties.

46.     Defendant has breached its implied warranty of fitness for a particular purpose in that its Symphony shingles were defective and not fit for the ordinary purposes for which such shingles are used; that is, to provide durable, long-lasting, suitable protection and use for residences and other properties.

47.     Defendant was aware of the particular purpose for which its Symphony shingles were intended and Plaintiff relied upon Defendant's skill, judgment and reputation.

48.     As a direct and proximate result of Defendant's breach of warranty, Plaintiff and the Class have suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT THREE – NEGLIGENCE

49.     Plaintiff hereby incorporates by reference the allegations contained in the prior paragraphs as if set forth in full.

50.     Defendant had a duty to exercise reasonable care in the design, manufacture and marketing of Symphony shingles.

51.     Defendant breached its duty to Plaintiff and the class by designing, manufacturing and marketing its Symphony shingles which are defective and deteriorate prematurely.

52.     Defendant knew or should have known that its Symphony shingles were defective and would deteriorate prematurely and did not perform as intended or represented.

10

53.     As a direct and proximate result of Defendant's negligence, Plaintiff and the Class members have suffered and will continue to suffer actual damages, in an amount to be proven at trial.

## COUNT FOUR – VIOLATION OF THE
## PENNSYLVANIA UNFAIR TRADE PRACTICES ACT

54.     Plaintiff hereby incorporates by reference the allegations contained in the prior paragraphs as if set forth in full.

55.     The conduct described above and throughout this Complaint took place within the Commonwealth of Pennsylvania and unfair methods of competition or unfair or deceptive acts or practices in violation of 201-2(4), (v), (vii), and (xxi) of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. C.S.A. § 201-1, *et seq.*

56.     The UTPCPL applies to the claims of all the Class members because the conduct which constitutes violations of the UTPCPL by the Defendant occurred within the Commonwealth of Pennsylvania. Moreover, Defendant's warranties direct class members to submit warranty claims to Defendant in the Commonwealth of Pennsylvania, and all warranty work is managed and processed within the Commonwealth.

57.     Plaintiff and other class members are consumers who purchased Symphony shingles for homes or property on which Defendant's shingles were installed primarily for personal, family or household purposes with the meaning of 73 Pa. C.S.A. 201-9.2.

58.     Defendant used and employed unfair methods of competition and/or unfair or deceptive acts or practices within the meaning of 73 Pa. C.S.A. § 201-2 and 201-3. Such unfair methods of competition and/or unfair or deceptive acts or practices include, but are not limited to the following:

59.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have under § 201-2(4)(v).

60.    Representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model, if they are of another under § 201-2(4)(vii).

61.    Failing to comply with any written guaranty or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services made under § 201-2(4)(xiv).

62.    Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding under § 201-2(4)(xxi).

63.    Defendant knew or should have known that its Symphony shingles were defective, would fail prematurely, were not suitable for use as an exterior roofing product, and otherwise were not as warranted and represented by Defendant.

64.    Defendant's misrepresentations, concealment, omissions, deceptions, and conduct were likely to deceive and likely to cause misunderstanding and/or in fact caused Plaintiff and other members of the Class to be deceived and to misunderstand that Defendant's Symphony shingles were suitable for use as a long-lasting exterior roofing product that they would be backed by long-term warranties honored by the Defendant.

65.    Plaintiff and other members of the Class have been damaged as a proximate result of Defendant's violations of the UTPCPL and have suffered actual, ascertainable losses by virtue of having purchased defective Symphony shingles.

66.    As a direct and proximate result of Defendant's violations of the UTPCPL as set forth above, Plaintiff and the members of the class have suffered an ascertainable loss of money and are therefore entitled to relief, including damages, plus triple damages, costs and attorneys fees under UTPCPL § 201-9.2.

## COUNT FIVE – VIOLATION OF THE
## KENTUCKY CONSUMER PROTECTION ACT

67.    Plaintiff hereby incorporates by reference the allegations contained in the prior paragraphs as if set forth in full.

68.    The Kentucky Consumer Protection Act, KRS § 367.110, *et seq.*, was designed to protect the public interest and the well-being of both the consumer public and the ethical sellers of goods and services.

69.    KRS § 367.110 defines a "trade" and "commerce" as "the advertising, offering for sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value, and shall include any trade or commerce directly or indirectly affecting the people of this Commonwealth."

70.    Defendant's sale of Symphony shingles, either directly or through agents, constitutes commerce under the Kentucky Consumer Protection Act.

71.    Defendant violated KRS § 367.170, which provides, inter alia, that: "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

72.    Defendant's actions constitute violations of the Kentucky Consumer Protection Act. In particular, Defendant's fraudulent concealment of the defects with the Shingles violated the Kentucky Consumer Protection Act.

73.    Plaintiff and other members of the Class have been damaged as a proximate result of Defendant's violations of the Kentucky Consumer Protection Act and have suffered actual, ascertainable losses by virtue of having purchased defective Symphony shingles.

74.    As a direct and proximate result of Defendant's violations of the Kentucky Consumer Protection Act, Plaintiff and the members of the class have suffered an ascertainable loss

13

of money and are therefore entitled to relief, including damages, plus triple damages, costs and attorneys fees.

## COUNT SIX – BREACH OF CONTRACT

75.     Plaintiff hereby incorporates by reference the allegations contained in the prior paragraphs as if set forth in full.

76.     In selling defective Symphony shingles which prematurely and unreasonably deteriorate, Defendant breached the terms of its agreements with the Plaintiff and the Class.

77.     As a direct and proximate result of Defendant's breaches of its agreements with the Plaintiff and the Class, they have suffered, and continue to suffer, substantial losses and damages to their property.

## COUNT SEVEN – FRAUDULENT MISREPRESENTATION

78.     Plaintiff hereby incorporates by reference the allegations contained in the prior paragraphs as if set forth in full.

79.     In connection with selling and marketing Symphony shingles, Defendant supplied false, misleading, inaccurate and incomplete information about the quality and durability of its product. This false, misleading, inaccurate and incomplete information was material to each sale transaction.

80.     Defendant had a duty to disclose to Plaintiff and the Class members the actual quality of its Symphony shingles and the truth about the CertainTeed warranty.

81.     Defendant knew or should have known that its Symphony shingles were defective and would deteriorate prematurely and were not as represented by Defendant. However, Defendant failed to exercise reasonable care in communicating accurate and complete information about the quality and durability of its Symphony shingles and the CertainTeed warranty. Defendant concealed

from the Plaintiff and members of the Class the quality of Symphony shingles and supplied false, misleading, inaccurate and incomplete information about the warranty. These misrepresentations concerned material facts with respect to the sales transaction and the warranty relationship between Plaintiff and Defendant.

82.     Plaintiff and the Class members reasonably and justifiably relied on Defendant's misrepresentations and non-disclosures to their detriment.

83.     Defendant knew or should have known that their statements were untrue and inaccurate and that Plaintiff and the Class members would reasonably and justifiably rely on Defendant's false misrepresentations and omissions to their detriment.

84.     Plaintiff and the Class members did reasonably rely on the misrepresentations of Defendant.

85.     As a direct and proximate result of these misrepresentations and concealments, Plaintiff and the Class members have suffered and will continue to suffer actual damages, in an amount to be proven at trial.

86.     Defendant acted wantonly, intentionally and with actual malice and/or with reckless indifference for the rights of Plaintiff and the Class members, thereby entitling Plaintiff and the Class members to recover punitive damages.

87.     Plaintiff and the members of the Class are entitled to damages and injunctive relief.


## COUNT EIGHT – NEGLIGENT MISREPRESENTATION

88.     Plaintiff hereby incorporates by reference the allegations contained in the prior paragraphs as if set forth in full.

89.    Defendant had a duty to exercise reasonable care in communicating accurate and complete information about the quality and durability of its Symphony shingles and the CertainTeed warranty.

90.    Defendant knew or should have known that its Symphony shingles were defective and would deteriorate prematurely and were not as represented by Defendant. However, Defendant failed to exercise reasonable care in communicating accurate and complete information about the quality and durability of its Symphony shingles and the CertainTeed warranty. Defendant concealed from the Plaintiff and members of the Class the quality of the its Symphony shingles and supplied false, misleading, inaccurate and incomplete information about the warranty. These misrepresentations concerned material facts with respect to the sales transaction and the warranty relationship between Plaintiff and Defendant.

91.    Plaintiff and the Class members reasonably and justifiably relied on Defendant's' misrepresentations and non-disclosures to their detriment.

92.    Defendant knew or should have known that their statements were untrue and inaccurate and that Plaintiff and the Class members would reasonably and justifiably rely on Defendant's false misrepresentations and omissions to their detriment.

93.    As a direct and proximate result of these misrepresentations and concealments, Plaintiff and the Class members have suffered actual damages in an amount to be proven at trial by purchasing and installing defective Symphony shingles that prematurely deteriorate and are not covered by the CertainTeed warranty. As a result, Plaintiffs and the Class members have incurred or will incur expenses due to the repair or replacement of their shingles and resulting structural damage.

94.    Plaintiff and the members of the Class are entitled to damages and injunctive relief.

## COUNT NINE – UNJUST ENRICHMENT

95.     Plaintiff hereby incorporates by reference the allegations contained in the prior paragraphs as if set forth in full.

96.     Defendant has benefited by charging, collecting and retaining title insurance premiums in excess of the discounted rates to which the Plaintiff and the Class members were entitled.

97.     Defendant through their wrongful conduct described above have or will reap substantial profits and/or cost savings that would not have occurred by further wrongful and unlawful conduct.

98.     In equity and in good conscience, it would be unjust and inequitable to permit Defendant to enrich themselves at Plaintiff's and class members' expense and to retain the benefits conferred due to its inequitable conduct.

99.     Accordingly, Defendant has been unjustly enriched by their unlawful and wrongful conduct and should not be able to retain the benefits conferred upon them at the expense of Plaintiff and members of the class.

100.     As a direct and proximate result of Defendant' charging, collection, and retention of the excessive rates, Plaintiff and the Class members have suffered damages in an amount to be proved at trial.

## COUNT TEN – STRICT LIABILITY

101.     Plaintiff hereby incorporates by reference the allegations contained in the prior paragraphs as if set forth in full.

102.     Defendant marketed and sold Symphony shingles with the intent that the product would be purchased by consumers including Plaintiff and Class members.

103.    At all relevant times, Defendant's Symphony shingles were defective as to design and manufacture, causing the shingles to prematurely deteriorate and making them unfit for their intended use. The installation of defective Symphony shingles has caused property damage to Plaintiff and the Class members.

104.    Defendant's Symphony shingles fail to perform in the accordance with the reasonable expectations of Plaintiff and the Class members. The benefits of the Symphony shingles design do not outweigh the risk of their failure.

105.    As a direct and proximate result of the defective condition of Defendant's Symphony shingles, Plaintiff's and the Class members' homes and properties suffered structural roof damage and other personal property damage.

106.    Defendant is strictly liable to Plaintiff and the Class members.

107.    Plaintiff and the Class are entitled to damages in an amount to be determined at trial.

## VII.    DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A.    Declaring that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for an order certifying this case as a class action;

B.    Equitable and injunctive relief enjoining Defendant from pursuing the policies, acts, and practices described in this Complaint;

C.    For damages under statutory and common law as alleged in this Complaint, in an amount to be determined at trial;

D.    Pre-judgment and post-judgment interest at the maximum rate allowed by law

E.    Awarding Plaintiff its reasonable costs and expenses, including attorneys' fees; and

F.    Awarding all other legal or equitable relief as the Court deems just and proper.

## VIII.   JURY DEMAND

Plaintiff, on behalf of himself and the members of the Class, hereby demand trial by jury on all issues so triable.

Date: December 20, 2019

Respectfully submitted:

**LOWEY DANNENBERG, P.C.**

By: _____

Gerald Lawrence, PA ID # 69079
Laura K. Mummert, PA ID # 85964
William J. Olson, PA ID # 322948
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
(215) 399-4770